# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

    Case No. 21-10088-EFM

NOLAN MARTIN,

    *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Nolan Martin's Motion to Terminate 18 U.S.C. § 4241(d) Commitment (Doc. 38). After finding Mr. Martin incompetent to stand trial, this Court ordered Mr. Martin to surrender to the Bureau of Prisons ("BOP") to determine whether there was a substantial probability that he would attain competency. Mr. Martin was evaluated by a BOP psychologist and by his own expert. On November 30, 2023, Mr. Martin's formal commitment ended, and he has been on conditional release since then. Thus, the Court finds that Defendant's Motion to Terminate Commitment is moot.

However, the question regarding Mr. Martin's ability to attain competence, as required by § 4241(d), remains. Specifically, Mr. Martin asks this Court to find that there is no substantial probability that additional time will help Mr. Martin attain the capacity required to advance the proceedings. After reviewing the reports, exhibits, and testimony by each expert, the Court finds that even with further treatment, Mr. Martin will likely not attain the necessary capacity to permit the proceedings to go forward.

I.     **Factual and Procedural Background**

A.     **Procedural History**

Mr. Martin was indicted on November 30, 2021. After an initial appearance and a detention hearing, on December 8, 2021, Mr. Martin was released on bond subject to conditions ordered by the Court. Mr. Martin filed a Motion to Determine Competency on September 12, 2022. Upon stipulation of the parties, on November 16, 2022, the Court found Mr. Martin mentally incompetent and, in accordance with 18 U.S.C. § 4241(d), ordered Mr. Martin to surrender to the custody of the Attorney General for hospitalization at a BOP facility "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." In compliance with that order, Mr. Martin surrendered to the BOP at the Metropolitan Correctional Center in Chicago ("MCC Chicago") on April 3, 2023. On August 24, 2023, the Court received a report of evaluation by Dr. Nicole Osborn, a psychologist at MCC Chicago. The report opines that Mr. Martin is mentally incompetent but that—with further treatment and competency restoration—Mr. Martin could attain competency to proceed.

On September 22, 2023, the Court held a status conference to ascertain the parties' positions on Mr. Martin's competency as informed by the evaluation report. Mr. Martin objected to the report's opinion that Mr. Martin could be restored to competency in a reasonable timeframe. The Court resolved to arrange for Dr. Osborn to testify at a hearing on the matter. On October 13, 2023, the Court ordered Mr. Martin to appear in person for a competency hearing informed by the BOP report.

On November 3, 2023, Mr. Martin filed a Motion to Terminate 18 U.S.C. § 4241(d) Commitment. On November 20, 2023, the Court held a hearing on Mr. Martin's motion. At the

hearing, the Court ordered Mr. Martin to be released from custody subject to the same conditions previously imposed upon him at his detention hearing. However, the question as to whether Mr. Martin could be restored to competency remained, and the Court resolved to hold a hearing to answer that question. In preparation for the hearing, the Court received and reviewed reports written by Dr. Osborn and Dr. Eric Gaughan, Mr. Martin's expert. Both experts testified at the hearing, which was ultimately held on August 1, 2024.

**B.     Dr. Osborn**

Dr. Osborn's testimony and report established the following. Mr. Martin's incompetency is due to his intellectual disability. Mr. Martin's treatment at MCC Chicago included competency restoration treatment, regular observation by psychologists and other staff, forensic interviews, and phone call monitoring. Mr. Martin attended all 12 formal sessions of the Jail Based Competency Restoration Program, which included regular and repeated instruction about court participants and functions. Additionally, Mr. Martin was enrolled in the Slater Method competency restoration group, which was developed to help individuals with intellectual disabilities obtain capacity. Mr. Martin's progress was discussed in multidisciplinary treatment team meetings. The treatment team observed that although Mr. Martin regularly attended his groups and appeared engaged, he failed to retain group material.

Mr. Martin was evaluated under these conditions from April 3, 2023 to August 16, 2023. Ultimately, because Mr. Martin demonstrated improved factual knowledge related to many competency-related concepts, Dr. Osborn opined that with additional treatment, there was a substantial probability that Mr. Martin would attain competency.

On cross-examination, Dr. Osborn testified that—from childhood—Mr. Martin had clinically-confirmed deficits in intellectual functioning, problem-solving, abstract thinking,

academic learning, and verbal reasoning. Mr. Martin also reported having life-long memory issues. Additionally, during a forensic intake interview 21 days after his arrival at MCC Chicago, Mr. Martin could not identify the charge he faces, and he was unaware of the allegations associated with the charge. Further, after months of treatment, Mr. Martin could not recall the name of the charge, or any details related to the allegations he faces.

During an August 2, 2023 interview, Mr. Martin was administered a Competence Assessment for Standing Trial for Defendants with Intellectual Disability ("CAST*ID"), which is a standardized test designed to assess a defendant's understanding of basic legal concepts, skills to assist in their defense, and an understanding of their case. In that test, Mr. Martin was unable to recall most of the information provided. Specifically, Mr. Martin could not recall the proper function of a judge, prosecutor, jury, or witness; did not understand the effect of a finding of not guilty; did not understand that a sentence could include options other than confinement; could not recall what a no-contest plea was; and did not understand the concept of a plea bargain. On the CAST*ID, Mr. Martin scored a 35, which is below the average score of 37 for individuals with intellectual disabilities who have later been found competent.

On re-direct, Dr. Osborn testified that the treatment Mr. Martin received at MCC Chicago was incomplete due to the statutory four-month limitation. However, with additional time and classes, Dr. Osborn believed that Mr. Martin could attain competency. Specifically, Dr. Osborn recommended that Mr. Martin finish the Slater method group sessions and complete individual competency restoration classes, which consist of one-on-one discussions with a psychologist about the case. Dr. Osborn estimated that this would take longer than four months but less than a year; however, she testified that there was no guarantee that efforts to restore Mr. Martin to competency would be successful.

## C.    Dr. Gaughan

Dr. Gaughan is a licensed psychologist who was retained by Mr. Martin to conduct an independent competency evaluation. He conducted two interviews with Mr. Martin, one in August of 2022 and one in April of 2024. He prepared reports based on both interviews. Dr. Gaughan also reviewed Dr. Osborn's report.

Dr. Gaughan described the differences in restoration treatment for an incompetent person suffering from a psychiatric condition versus an incompetent person with an intellectual disability. Treating the former usually includes medication or addressing the underlying issues, whereas treating the latter consists of didactic education. Further, he testified that an intellectual disability is a lifelong condition, whereas psychiatric conditions are often intermittent.

Dr. Gaughan testified that Mr. Martin exhibits a consistent constellation of deficits in his intellectual ability which do not seem to change even after repetitive education. Moreover, Dr. Gaughan concluded that Mr. Martin's intellectual disability was a chronic and persistent condition that had been present since Mr. Martin's childhood. Mr. Martin's education records show that he was on an individual education plan ("IEP") which indicated that he was operating at a young elementary student level when he was in high school. Dr. Gaughan's review of Mr. Martin's education records indicate that his academic learning did not improve over the course of his formal education in any significant way. Because he did not meet the goals of his IEP, his IEP goals never changed. This indicates that he did not make progress in response to the school's education efforts.

Dr. Gaughan also identified that in 2013 the Social Security Administration conducted a disability evaluation of Mr. Martin by administering the Wechsler Adult Intelligence Scale-IV test. In this test, Mr. Martin scored extremely low. He scored in the first percentile, meaning 99% of the adult population would achieve a higher score than Mr. Martin.

In interviewing Mr. Martin, Dr. Gaughan observed significant deficits in learning and retaining information, connecting concepts, understanding concepts, and abstract reasoning.

In Dr. Gaughan's review of Dr. Osborn's report, he agreed with her observations and noted that they were consistent with his own. However, he did not believe that Dr. Osborn's conclusions followed from her observations. Specifically, Dr. Osborn's report explained that Mr. Martin struggled to retain information, even after four months of treatment. Dr. Gaughan testified that Mr. Martin's inability to retain information was consistent with his educational records. Accordingly, Dr. Gaughan concluded that Mr. Martin's intellectual disability prevents him from retaining information, which is inconsistent with Dr. Osborn's opinion that Mr. Martin made—or could continue to make—substantial progress.

Dr. Gaughan interviewed Mr. Martin five months after he left MCC Chicago. During that interview, Dr. Gaughan observed that Mr. Martin could not recall why he was sent to MCC Chicago or any substantive information about what he experienced while at MCC Chicago. He remained confused about his own role in the case. Specifically, when asked to identify the Defendant in this case, Mr. Martin identified that his attorney was the Defendant on multiple occasions. He remained confused about the charge and potential penalties that he faces. When Dr. Gaughan instructed Mr. Martin on the potential penalties, including a 20-year jail sentence, Mr. Martin seemed surprised. Finally, Mr. Martin remained confused as to the nature of a plea or plea bargain.

Ultimately, Dr. Gaughan testified that Mr. Martin had reached his intellectual ceiling, and so there remains a substantial probability that Mr. Martin will not improve even with treatment and education. He does not believe time will be of any consequence because, based upon Mr.

Martin's educational records, Dr. Osborn's report, and Dr. Gaughan's interviews with Mr. Martin, it appears that his capacity to learn and retain information is significantly compromised.

## II. Legal Standard

A criminal defendant may not stand trial or plead guilty unless he is competent to do so.[1] In 18 U.S.C. § 4241, Congress defined a mentally incompetent defendant as one "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[2] The statute requires a two step procedure to determine a defendant's mental incompetence. First, the court must "determine whether reasonable cause exists to believe the defendant may be mentally incompetent; if so, the district court must conduct a competency hearing."[3] Second, "if the competency hearing establishes the defendant's mental incompetency by a preponderance of the evidence," the court must halt the proceeding.[4]

If the court finds the defendant incompetent, the court must "commit the defendant to the custody of the Attorney General" who "shall hospitalize the defendant for treatment in a suitable facility" to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward"[5] Unless the charges are earlier disposed of, this hospitalization must be for a reasonable time but not to exceed four months.[6] The court may extend hospitalization for an additional reasonable period of time if the court finds that

---

[1] *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

[2] 18 U.S.C. § 4241(d).

[3] *United States v. Landa-Arevalo*, 104 F.4th 1246, 1253 (10th Cir. 2024) (citing 18 U.S.C. § 4241(a)).

[4] *Id.* (citing 18 U.S.C. § 4241(d)).

[5] 18 U.S.C. § 4241(d)(1).

[6] *Id.*

there is a substantial probability that the defendant will attain competency within such additional time.[7] If the defendant's condition has not improved after the specified time, the defendant is subject to hospitalization or civil commitment procedures outlined in 18 U.S.C. § 4246 and § 4248, respectively.[8]

## II. Analysis

The Government contends that with more hospitalization and treatment, there is a substantial probability that Mr. Martin "will attain the capacity to permit the proceedings to go forward."[9] However, Mr. Martin contends that he has reached capacity, and no improvement will occur regardless of additional hospitalization and treatment.

Under § 4241(d)(1), Mr. Martin already spent at least four months hospitalized at MCC Chicago. Thus, the question before this Court is whether "there is a substantial probability" that with additional time at a treating hospital, Mr. Martin "will attain the capacity to permit the proceedings to go forward."[10] Dr. Osborn's and Dr. Gaughan's reports and testimony inform the answer to this question. Both doctors make similar observations but arrive at different conclusions. The Court finds that Dr. Gaughan's opinion is more consistent with the evidence presented.

Both doctors agree that Mr. Martin has suffered from this intellectual disability for nearly his entire life, and it appears that Mr. Martin has met his intellectual ceiling. Dr. Osborn testified that with individual education, Mr. Martin may be restored to competency. However, the evidence demonstrates that even with individual education opportunities Mr. Martin consistently fails to

---

[7] 18 U.S.C. § 4241(d)(2)(A).

[8] 18 U.S.C. § 4241(d).

[9] 18 U.S.C. § 4241(d)(2)(A).

[10] 18 U.S.C. § 4241(d)(2)(A).

reach the goals set before him. This is most evident in Mr. Martin's static IEP goals: there, education efforts did not result in Mr. Martin's intellectual improvement. Consequently, it appears unlikely that further education efforts will result in Mr. Martin's progress.

This does not appear to be due to Mr. Martin's lack of effort. As documented by Dr. Osborn, Mr. Martin participated in 100% of the treatment and education opportunities provided during his four months at MCC Chicago, and staff noted that he appeared engaged in the group meetings. But despite these efforts, Mr. Martin failed to understand the most basic aspects of the proceedings and the charge he faces. He could not recall the name of the charge, nor could he describe in any manner the allegations underlying the charge. Further, even after repeated instruction, Mr. Martin could not retain information sufficient to allow him to discern the roles of the participants in court.

Based upon the failure of the treatment efforts thus far and Mr. Martin's historically documented chronic and persistent intellectual disability, the Court cannot find that there is a substantial probability that any further efforts will restore Mr. Martin to competency.

**IT IS THEREFORE ORDERED** that there is not a substantial probability that in the foreseeable future Defendant will attain the capacity to permit the proceedings to go forward.

**IT IS FURTHER ORDERED** that Defendant's Motion to Terminate 18 U.S.C. § 4241(d) Commitment (Doc. 38) is moot.

**IT IS SO ORDERED**.

Dated this 20th day of November, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE